HENDERSON WAREHOUSE COMPANY *v.* BRAND.

1. When the petition in an action against a partnership contains an allegation that the same is composed of certain named persons, and there is no plea of "no partnership," but on the contrary, all of these persons unite in an answer admitting the truth of such allegation, a verdict in the plaintiff's favor binds the partnership and all the alleged members thereof who were served.
2. A contract between a warehouse firm and a customer, by the terms of which it, in consideration of specified sums per bale per month, agreed to handle and store his cotton and keep the same insured in his own name, is not complied with merely by keeping all the cotton in the firm's warehouse, including that of this customer, insured generally under policies taken out in the name of the partnership, and in such case this customer is entitled, upon a settlement with the partnership for the proceeds of his cotton sold by it, to have a deduction from these gross charges for handling, storage, and insurance, in an amount equivalent to what the insurance for which he stipulated would have cost at current rates.
3. When such customer received from the firm what purported to be the net proceeds of his cotton, he being at the time in ignorance of the fact that it had violated its contract to keep the same insured in his own name, he was not estopped from bringing his action for the value of such insurance; nor was it incumbent upon him·to tender back the money he had actually received, he being in any event entitled to keep the same.
4. It appears from the record that the requests to charge were, so far as legal and pertinent, covered by the general charge given to the jury; the charges complained of were substantially correct and adapted to the testimony; the evidence warranted the verdict, and there was no error in denying a new trial.

Argued June 14,—Decided July 25, 1898.

Complaint. Before Judge Hutchins.. Clarke superior court. October term, 1897.

*John J. Strickland,* for plaintiffs in error.
*E. T. Brown* and *C. H. Brand,* contra.

LITTLE, J. The defendant in error brought suit in the court below against C. B. Griffeth, E. R. Hodgson, A. H. Hodgson, and J. M. Hodgson, whom he alleged to be partners using the firm name of the Henderson Warehouse Company, and that they were indebted to him in the sum of seven hundred and twenty-two dollars and seventy-five cents on an open account, a bill of particulars showing the items being attached to the petition.

It was further alleged, that in September, 1893, the plaintiff entered into a contract with defendants to take charge of, and store for the plaintiff, certain cotton in their warehouse in the city of Athens, for which the defendants were to receive fifty cents per bale for each bale of said cotton for the first month, and twenty five cents per bale for each bale of cotton for each succeeding month, and that said charges when paid were to be in full for storing, handling, and insuring the cotton. The petition further alleged, that the plaintiff expressly·contracted and agreed with the defendants that they would insure petitioner's individual cotton in his own name, to be identified in the policy of insurance by his own individual mark on said cotton, which was B, and for his own use. It was alleged that the defendants did not so insure his cotton and did not take out the policy of insurance in his own name, identifying and describing said cotton as it was marked; that he had stored at defendants' warehouse three hundred and forty-one bales of cotton, identified and marked with his individual mark, for twenty months, under said contract; that the cost and reasonable charge for insurance alone on said cotton was ten cents per month per bale, making the entire cost on three hundred and forty-one bales for twenty months aggregate six hundred and eighty-two dollars. It was further alleged that, some two months prior to filing the petition, the plaintiff sold his cotton so stored, and had a settlement with the defendants for storage, insurance, etc., and paid defendants for insurance on three hundred and forty-one bales of cotton for twenty months, with the understanding, at the time he so paid the same, that the defendants had performed their part of the contract in reference to insuring the cotton and had insured the same in his own name, identified by his mark, but that since said payment he has ascertained that the defendants did not so insure his cotton, but they nevertheless demanded and collected of him, in the settlement, full charges according to their contract, which included the stipulation as to insurance, that the defendants had no right to charge and receive from him anything for insurance, and he institutes the action to recover the value of the insurance on three hundred and forty-one bales of cotton, aggregating six hundred and eighty-two dollars which

he had paid to the defendants. By the petition plaintiff also seeks to recover the value of cotton samples, which he alleges to be of the weight of five hundred pounds, and of the value of thirty-five dollars, which the defendants had agreed to keep for him. He also includes in the suit the value of a basket, fifty cents, and also an item of four dollars and seventy-five cents for an overcharge on one bale of cotton which had been lost by the defendants.

The defendants answered the petition, and, after admitting the formal parts, and denying certain material allegations, set up as their defense the following facts. Under their contract they were to have thirty cents per bale on one hundred and twenty bales of cotton for each month the same remained in their warehouse; they agreed for the price mentioned to insure petitioner's cotton and keep the same insured, and they did insure it and keep the same insured in the manner usually followed by warehousemen, and complied fully with their contract in relation to insurance. They aver that while it is true the three hundred and forty-one bales of cotton, marked as alleged in the petition, were sent to their warehouse, it is not true that all were there under the contract mentioned; that one hundred and twenty bales were there at thirty cents per month, and that ninety-seven of these were there twenty months, and twenty-one bales for seventeen months. They aver as true that in the summer of 1895 plaintiff sold his cotton, and paid defendants for insurance on three hundred and forty-one bales for the actual time the cotton was in the warehouse. They deny that the insurance was ten cents per month. They aver that at the time of the settlement they had performed their part of the contract, and presumed the plaintiff knew it. They deny that at the time of the settlement the plaintiff made any claim as to the want of insurance. They admit the loss of one bale of cotton, and aver that they made it good at the time of the settlement. They deny liability to pay for the sample cotton or basket, and aver that at the time of the settlement all matters between them, including insurance and every other claim growing out of the contract, were fully and completely settled, and that all facts concerning the same were known to both parties. The defendants

aver that the plaintiff is indebted to them in the sum of two hundred and sixty-three dollars, under a mistake in the settlement in relation to the storage charges; for which they pray judgment. The plaintiff amended his petition, alleging that it was a part of the contract that he was to pay storage for six months whether cotton remained that long or not, and it was also a part of the contract that the defendants should insure his cotton in some solvent insurance company in his individual name and for the full value of the cotton. The evidence introduced on the trial of the case was conflicting. That introduced on the part of the plaintiff tended to support the allegations of the petition. The jury returned a verdict in favor of the plaintiff for two hundred and five dollars and twenty cents, besides interest. The defendants made a motion for a new trial, on the grounds that the verdict was without evidence to support it and contrary to law, and also on the further grounds that the court erred in giving to the jury certain instructions, and in refusing to charge as requested.

1. It is complained that the jury found a verdict against C. B. Griffeth, one of the defendants, when the evidence shows that C. B. Griffeth had gone out of the firm before any but a few bales of plaintiff's cotton was received. It may be noted in this connection that the plaintiff filed his petition against several persons as constituting a firm, one of these persons being C. B. Griffeth. The allegations were that this firm, so composed, was indebted to the plaintiff in the manner set out, and the details of the plaintiff's claim were fully given. Process was prayed against the defendants, and personal service was had upon the defendant Griffeth. All of the defendants, including Griffeth, answered to the merits of the case, and there was no plea on the part of the defendant Griffeth of "no partnership," and no averment that he individually was not liable. On the contrary the allegations of the petition, that the partnership existed and that Griffeth was a member thereof, were expressly admitted to be true in the answer filed by the defendants; and Griffeth joined with the other defendants in denying the contract set up by the plaintiff, and averring another contract as existing between the parties, and joined with the other defendants in plead-

ing to the action on its merits. Under the provisions of the
Civil Code, § 2637, it is not necessary, where partners are sued
in their firm name, that the partnership shall be proved, unless
denied on oath by a plea in abatement. The evidence for the
plaintiff tended to show that the contract set up by the plaintiff
was made with the warehouse firm when the defendant Griffeth
was a member of that firm; and if there was any reason why he
as a member of said firm was not liable with the other members,
that fact should have been set up by a plea and supported by evi-
dence. In the absence of such, it is too late, after verdict, for
him to complain, and the verdict can not be set aside on this
ground.

2. The court was requested to charge the jury, in relation to
the insurance of the plaintiff's cotton, that if the jury believed
from the evidence that the cotton while in the warehouse was
fully covered by insurance in some solvent company doing busi-
ness in Athens, and that in case of fire plaintiff would have been
fully protected from loss, this would be a compliance with the
contract as to insurance, and the plaintiff could not recover,
whether the insurance policies were in his name or in the name
of the defendants; that if the cotton was insured in the defend-
ants' name and a fire had occurred plaintiff could have protected
himself, either by having the insurance policies transferred to
him, or by suing the defendants and garnisheeing the company,
or by allowing the defendants to collect the policies and proceed-
ing directly against them for the value of the cotton. "There
being no evidence of the insolvency of the defendants, plaintiff
would have been protected if you believe his cotton was insured
all the while as contended by defendants." We think this request
to charge was properly refused. The contract testified to by the
plaintiff was, that the defendants agreed to insure his cotton and
take the policies in the plaintiff's name, describing his cotton by
his individual mark, thus segregating plaintiff's cotton from the
remainder of the cotton stored in the warehouse and covering it
specially for the plaintiff's direct benefit. The request to
charge assumed that the terms of this contract were, in law,
complied with whether the insurance policies were taken in the
name of the plaintiff or in the name of the defendants, merely

because of the fact, as they claim, that if insured in the defendants' name and a loss had occurred by fire, the plaintiff could have protected himself by a transfer of the policies or by bringing suit against the defendants, and would have been protected in the absence of evidence of insolvency of the defendants.    A contract of fire-insurance is a contract of indemnity against loss by fire.    The owner of the cotton had the right to choose the person or corporation with whom he would make this contract of indemnity.    If he preferred that a fire-insurance company should directly agree to pay his loss, it was his right to exercise such preference, and it was not in the power of the other contracting parties to substitute any firm or individual to make the contract of indemnity.    It is conceivable that a person would be willing to risk a regularly established insurance company, rather than a business firm, although solvent.    It was also the right of the owner of the cotton to enter into such a contract as would cause the adjustment of the loss to be made directly with him, and not be complicated by transfers of the policies, or by a suit and the issuance of summons of garnishment against the indemnifying contractor.    At common law a strict and literal performance of the terms of the contract was required; but by rules of equity, either adopted by statute or recognized by the courts, a substantial compliance with the terms of the contract is sufficient, and if any damage is suffered from a failure to comply strictly with the contract, it may be recovered by action.    See authorities cited in note 53, Clark on Contracts, 628.    Where a party has entered into a contract to perform work and furnish materials of a specified character, and the other party agrees to pay for the same upon the performance of the contract, although the work may be performed and materials furnished, yet if not done in the manner stipulated, no action will lie for compensation.    The promise must be performed as required by the contract, to entitle the party to recover therefor.    Clark on Contracts, 627, note.    See also *Hardeman* v. *English,* 79 *Ga.* 387.    If it be true that the contract entered into between the parties contained the stipulation testified to by the plaintiff in the court below, it was not a performance of such stipulation on the part of the warehouse company to have covered all of the

cotton in their warehouse, including that belonging to the plain-
tiff, with a general policy of insurance payable to itself; and
the court committed no error in refusing to give the charge re-
quested.

3. The court was requested to charge the jury as follows:
"If you believe that such settlement was made between plain-
tiff and defendants, and plaintiff did not know of the facts as to
how his cotton had been insured, and could not have found out
by reasonable diligence, then he might have a right to set aside
the settlement and reopen it, but he can not do so in this proceed-
ing and could not recover until he had set it aside and placed the
defendants in the same position they were prior to the settle-
ment.    That is to say, before plaintiff could recover or go back
of the settlement, he would have to tender to the defendants the
money that defendants had paid out, based on that settlement,
and place them in the position they were prior to the settlement."
We find no error in the refusal of the court to give the charge
as requested.   It is not questioned in this case that the defend-
ant in error had a large sum of money coming to him from the
sale of his cotton, in excess of the charges of the warehouse
company for storage, insurance, etc.   Hence, it was not a right
that the warehouse company had, after a sale of the cotton, to
retain, under any circumstances, so much of the proceeds as ex-
ceeded the amount of their charges; and if the defendant in er-
ror should be required to turn over to the warehouse company
all the money he received, he would be turning over his own
money, to which the warehouse company had no claim.   It was
not necessary for the maintenance of the present action that the
plaintiff should rescind or offer to rescind the settlement made
with the warehouse company, and tender back the money he
had actually received in the settlement.   It appears, as before
said, that the money thus received by the plaintiff was the net
proceeds from the sale of cotton belonging to him, which had
been sold by the warehouse company under his direction, and
was what remained from such sale, after deducting charges for
storage, insurance, etc., as contemplated by the contract under
which said cotton was stored and to be insured.   If the ware-
house company had fully performed its contract, the plaintiff

received no more in the settlement than he was entitled to have. By the Civil Code, § 3712, it is provided that, in order for a party to rescind, without the consent of the opposite party, for non-performance by him of his covenants, both parties must be restored to the condition in which they were before the contract was made. The doctrine of rescission is based upon restitution, and it is only applicable generally where restitution can or ought to be made. It must be apparent that this doctrine can have no application in the present case. The plaintiff had acquired nothing under the settlement which the warehouse company was entitled to have restored. The theory of the plaintiff is, that they did not turn over to him enough; that he allowed the deduction for insurance to be made, in ignorance of the fact that the insurance had not been taken according to the agreement. If this be true, what should he restore, and for what purpose? The company could not claim to hold the proceeds of the cotton after the payment of its charges; they were not its owners. The defendants insist that the plaintiff paid no more charges than were due, but there is no evidence tending to show, and no claim, as we understand, made by the company, that he did not pay as much as was due. The issue is then resolved into the questions of fact: what was the contract in relation to insurance, and did the warehouse company comply with the terms of the contract? If it did, the settlement holds good. If it did not, and at the time of the settlement the plaintiff was ignorant of that fact, and allowed the warehouse company to retain a sum sufficient to pay the insurance, believing that it had been taken according to the contract, he would certainly have a right of action to recover the amount so retained, without turning back to the company the amount concerning which there was and is no dispute.

4. The refusal of the court to charge as requested in the second, third, and fourth grounds of the motion for a new trial, is qualified by notes of the presiding judge, that the principles of law contained in these requests were covered by the general charge; and therefore need not be further considered, except to say that the portions of such requests not embraced in the general charge, according to the notes of the judge, ought not to

have been given. The charge of the court in full is not in the record, and the statement of the judge made in connection with these grounds, that the principles of law requested to be given in charge, so far as legal and pertinent, were covered in the general charge, meets the objection that the judge committed error in refusing to charge as requested. There is ample evidence found in the record to support the verdict, if the jury believed the witnesses introduced for the plaintiff to support the allegations .made in the petition; and this court would not be authorized to set it aside and grant a new trial for the want of evidence.

*Judgment affirmed. All the Justices concurring.*